UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THE UNITED STATES OF AMERICA                                  03-CR-32E

            -vs-                                     MEMORANDUM
                                                  and
DEMARIUS MOORE                                               ORDER[1]

---

      Defendant Demarius Moore has been indicted for one count of distribution of

a controlled substance in or near a school in violation of 21 U.S.C. §§841(a)(1),

841(b)(1)(B) and 860(a), and for one count for possession of a controlled substance in

violation of 21 U.S.C. §844(a).  The undersigned referred this case to Magistrate Judge

Hugh B. Scott pursuant to 28 U.S.C. §§636(b)(1)(A) and (B) for all pre-trial matters and

to hear and report upon dispositive motions.  Defendant, on April 25, 2003, moved to,

*inter alia*, suppress the evidence seized and the statements that he had allegedly

made after his arrest ("Suppression Motion").  A suppression hearing — in which

testimony and evidence were presented by both parties as they pertained to the

Suppression Motion — was held before Judge Scott on November 22, 2004 and on

March 9, 2005.[2]  Subsequently, both parties filed post-hearing briefs and Judge Scott

issued his Report and Recommendation ("R&R") on December 7, 2005, in which he

recommended that defendant's Suppression Motion be denied.  On January 17, 2006,

defendant filed objections to the R&R ("Objections") and the government filed its

---

[1]This decision may be cited in whole or in any part.

[2]The transcript of the evidentiary hearing was filed with the Clerk of the Court (docket no. 54).

response to the Objections on February 10, 2006.  For the reasons set forth below, the R&R will be adopted in its entirety and defendant's Objections will be overruled.

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" and may adopt those parts of the R&R to which no *specific* objection is raised, so long as such are not clearly erroneous.  28 U.S.C. §636(b)(1)(c); *see also Black* v. *Walker*, 2000 WL 461106, at *1 (W.D.N.Y. 2000). Conversely, the undersigned must make a *de novo* determination with respect to those portions of the R&R to which specific objections have been made.  28 U.S.C. §636(b)(1)(c); *United States* v. *Raddatz*, 447 U.S. 667, 675-676 (1980); *Sieteski* v. *Kuhlmann*, 2000 WL 744112, at *1 (W.D.N.Y. 2000). The Objections satisfy Rule 58.2(a)(3) of the Local Rules of Criminal Procedure ("LRCrP"), which states:

> "The written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."

As such, the undersigned will make a *de novo* determination of the Objections and review the remaining issues for clear error.

The R&R set forth in detail the facts — which are not in dispute and are based on testimony and evidence presented at the suppression hearing — and thus only a brief reiteration is necessary here.  Federal Bureau of Investigation ("FBI") Agent Greg McCarthy of the Career Criminal Task Force ("CCTF") was responsible for investigating violent gang-related activity, guns and narcotics in Buffalo, N.Y.  In

Summer 2001, McCarthy, in seeking leads into several shootings in the Buffalo area, interviewed people and identified subjects regarding gang and narcotics activities. During the course of his investigations, McCarthy interviewed an individual who provided the street names of people who may have been involved in the shootings and related narcotics activities. One of said names was "Dip".

On September 21, 2001, McCarthy was investigating gang activity in the Fillmore area. He noticed three men — one of whom was defendant — standing in the front yard of a house on Riley Street smoking what appeared to be a marijuana cigar. Defendant identified himself as Dimario Speed. The three men were given the choice and decided to leave the area. Thereafter, McCarthy searched the yard in which the three men were standing and found crack cocaine approximately thirty feet from where the three men were standing.

A search on the New York Statewide Police Information Network ("NYSPIN") revealed that the information defendant had given McCarthy about "Dimario Speed" was inaccurate and thus indicated that defendant had falsely identified himself. McCarthy discussed the situation with other CCTF agents and reviewed a photograph that matched the description of the man who identified himself as Dimario Speed. An informant identified the man as "Dip" and information indicated that "Dip" was also known as Demarius Moore, who was implicated in shootings in 2000.

On October 10, 2001, McCarthy saw the person who had identified himself as Dimario Speed — *viz.*, the defendant — and sought to talk to him about the drugs he had found on the Riley Street yard and the false identification defendant had previously given McCarthy.  McCarthy and defendant allegedly made eye contact, after which defendant attempted to walk away from McCarthy.  Although McCarthy told him to stop, defendant walked into Pike's Peek Deli ("the Deli") and McCarthy followed.  McCarthy observed that defendant was looking at him via the Deli's security mirrors and that defendant's hands were in front of him.  McCarthy believed that defendant was a gang member who may be carrying a weapon.  McCarthy proceeded with caution and called out to defendant.  McCarthy grabbed defendant's sleeve and told defendant to stop, that he was a police officer and that he wanted to talk to defendant.  Defendant put up his hands and did not say anything.

McCarthy did not see a bulge in defendant's clothes or any weapons, but wanted to ensure that he and others in the Deli were safe before removing defendant from the Deli.  He, therefore, brushed the front of defendant's waistband and body in search for weapons before leaving the Deli.  McCarthy had his left hand on defendant's left sleeve as he was escorting him out of the Deli and felt a lump in defendant's left sleeve which he believed to be crack cocaine.  He did not find any weapons and left the Deli with defendant.  Once outside, McCarthy conducted a more thorough search for weapons and again did not find any weapons, but did find more crack cocaine.  Upon finding this additional crack cocaine, McCarthy felt as

- 4 -

though either he had to place defendant in custody or a fight would ensue and defendant would attempt to flee.  Thus, McCarthy decided to place defendant under arrest for suspected possession of narcotics and conducted an even more thorough search.  Once under arrest and searched, defendant was advised of his Miranda warnings and was driven to the CCTF office.  At the CCTF office, defendant was again advised of his Miranda warnings and signed a Miranda waiver form and filled out a sworn statement.

Defendant claims that McCarthy's observations did not reasonably warrant an intrusion upon defendant's protected interests — to wit, his right from unreasonable searches and seizures.  Defendant claims that he was not engaged in suspicious activity and McCarthy cannot point to any facts indicating that defendant was potentially dangerous and thus needed to be searched.  The R&R concluded, however, that McCarthy had reasonable suspicion that criminal activity might be afoot given defendant's prior lie about his identity, his evasive behavior and the information McCarthy had about defendant.  The R&R thus found that stopping defendant was reasonable and continued to find that McCarthy was justified in frisking defendant because such was a necessary precaution in light of defendant's behavior, history and gang affiliation.  Defendant, in his Objections, claims that the R&R was erroneous because defendant's failure to properly identify himself on September 21, 2001 and his alleged avoidance of McCarthy on October 10, 2001 do not amount to reasonable suspicion.  Furthermore, the Objections assert that the

government did not prove that the information on which McCarthy relied about defendant's gang and gun activities was reliable.  Finally, defendant contends that, without reasonable suspicion to stop defendant and without any indication that defendant was armed, McCarthy did not have the requisite probable cause to search and arrest defendant.  The Objections, therefore, maintain that the de facto arrest of defendant was not warranted and thus the crack cocaine seized from him must be suppressed as fruit of the poisonous tree.  This Court will make a *de novo* review of whether the initial stop was justified and, if it was, whether the subsequent search was also justified.

In addressing the suppression of evidence issue, the R&R employed the two-part legal analysis enunciated by the Supreme Court in *Terry* v. *Ohio*, 392 U.S. 1 (1968), for determining whether brief investigatory stops ("*Terry* stops") — such as the one at issue here — violate the Fourth Amendment.  In so doing, the R&R first addressed whether McCarthy had "reasonable suspicion to believe that criminal activity 'may be afoot' so as to justify the 'investigatory stop'" and then addressed whether McCarthy had "a reasonable basis for believing" that defendant was armed thereby justifying the pat down search and seizure of the crack cocaine found on him.  The R&R found that it was reasonable for McCarthy to believe that "criminal activity was afoot" and that McCarthy had a reasonable basis for believing that defendant was armed so as to justify frisking him and seizing the crack cocaine from him.  The

R&R based these findings on that which McCarthy knew and/or suspected of defendant and defendant's behavior prior to and at the time of the stop.

The Supreme Court has held that brief investigatory stops of persons that fall short of a traditional arrest satisfy the Fourth Amendment if "the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot'". *United States* v. *Arvizu*, 534 U.S. 266, 273 (2002) (citations and quotations omitted). This standard, which falls short of what is required for probable cause, is based on the "totality of the circumstances" of each case to determine if there is a "'particularized and objective basis' for suspecting legal wrongdoing." *Ibid* (citations and quotations omitted).   The undersigned agrees with the R&R that it was reasonable for McCarthy to believe that "criminal activity was afoot". Defendant had lied to McCarthy about his identity, appeared to be evading McCarthy and was affiliated with gangs and gun violence.  McCarthy, moreover, had found crack cocaine less than thirty feet from where he had previously encountered defendant.  Under these circumstances, McCarthy had reasonable suspicion that criminal activity may be afoot sufficient to stop defendant.

Next, the R&R found that, after McCarthy stopped defendant, he had a "reasonable suspicion" to justify patting him down.  A pat down search following a *Terry* stop is justified if it is reasonable.   The test is whether, under the circumstances, the "officer is justified in believing that the [person] is armed and presently dangerous to the officer or others."  *Terry*, at 24.  In other words, does the

officer have a reasonable suspicion that the defendant was armed and dangerous. *Terry*, at 27. Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch'" that a person may be engaged in some illicit activity. *United States* v. *Sokolow*, 490 U.S. 1, 7 (1989) (citation and quotations omitted). By the same token, however, reasonable suspicion does not require either probable cause or evidence of a direct connection linking the suspect to the suspected crime. *United States* v. *Cortez*, 449 U.S. 411, 421 (1981). Reasonable suspicion, therefore, is an intermediate standard that cannot be precisely defined, but must be determined on a case-by-case basis taking into consideration the totality of circumstances. *Sokolow*, at 8; *Florida* v. *Royer*, 460 U.S. 491, 516 (1983).

The fact that this case involves a pat down search is a key component to the analysis because an inquiring court must balance "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *United States* v. *Hensley*, 469 U.S. 221, 228 (1985). To keep this balance true, the court must make a practical, commonsense judgment based on the idiosyncrasies of the case at hand. *Ornelas* v. *United States*, 517 U.S. 690, 695-696 (1996). Thus, once it is established, as it is here, that the officer's actions were justified at their inception, the question becomes whether the officer's subsequent actions were fairly responsive to the emerging tableau — to wit, the circumstances originally warranting the stop, informed by what occurred and what the officer learned as the stop progressed. *United States* v. *Chhien*, 266 F.3d 1, 6 (1st

Cir. 2001); *see also United States* v. *Romain*, 393 F.3d 63, 71 (1st Cir. 2004) ("The propriety of an officer's actions after an initial stop depends on what the officer knows (or has reason to believe) and how events unfold."). An officer may shift his focus and increase the scope of his investigation by degrees if his suspicions mount during the course of the stop. *See Terry*, at 10 (observing that "the police are in need of an escalating set of flexible responses, graduated in relation to the amount of information they possess"). Officer safety is a valid justification for a pat down search or protective frisk only when the officers "observes *** that the persons with whom he is dealing may be armed and presently dangerous". *Id.* at 30.

With these tenets in mind, a review of the facts known to or inferable by McCarthy at the time of the pat down will determine that the R&R was correct in finding that the pat down was reasonable. First, defendant was associated with gang activity — some of which is violent activity — and has been implicated in several gun-related activities. Thus, it is reasonable to believe that defendant may have been armed and dangerous. Second, simply from stopping defendant, McCarthy felt crack cocaine in defendant's sleeve. As such, defendant knew that he was in trouble and was probably going to be in more trouble. McCarthy, as a prudent officer, reasonably assumed that defendant could be physically violent in an attempt to flee. The pat down search to find weapons, therefore, was supported by reasonable suspicion that defendant was armed and dangerous. Defendant contends such was not reasonable because McCarthy did not see a bulge appearing to be a

gun.   Although this is true, a gun may have been adequately concealed or the weapon may have been a knife not causing a bulge.  This evidence, coupled with the fact that defendant acted in an evasive manner upon seeing McCarthy, justifies the pat down search of defendant.

Finally, as the R&R found, the reasonable pat down search detected crack cocaine, providing probable cause to arrest defendant.  Defendant's claim that the crack cocaine is fruits of the poisoned tree must fail because McCarthy's stop and search of defendant was justified and thus legal.

Accordingly, it is hereby **ORDERED** that defendant's Objections are overruled and that Judge Scott's Report and Recommendation dated December 7, 2005 (docket no. 68) is adopted in its entirety.

DATED:       Buffalo, N.Y.

February 24, 2006

_____
/s/ John T. Elfvin
JOHN T. ELFVIN
S.U.S.D.J.